**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERRY GAFFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14-cv-01603-JAR |
| | ) | |
| ROBERT A. MCDONALD, | ) | |
| Secretary of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on cross-motions for summary judgment filed by

Defendant Robert A. McDonald (Doc. 35) and Plaintiff Terry Gafford (Doc. 39). The motions

are fully briefed and ready for disposition. For the following reasons, Defendant's motion for

summary judgment will be granted, Plaintiff's motion for summary judgment will be denied, and

judgment will be entered in favor of Defendant.

**I.    Background**

The following facts are undisputed except where indicated.[1] On March 29, 2009,

Plaintiff, an African-American man, started a one-year probationary term of employment as an

---

[1] Local Rule 4.01(E) provides the following with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have
> attached a statement of uncontroverted material facts, set forth in a
> separately numbered paragraph for each fact, indicating whether each fact
> is established by the record, and, if so, the appropriate citations. Every
> memorandum in opposition shall include a statement of material facts as
> to which the party contends a genuine issue exists. Those matters in
> dispute shall be set forth with specific references to portions of the record,

Education Program Specialist with the Employee Education System ("EES") of the Department of Veterans Affairs ("VA") (Doc. 41 (Defendant's Reply to Plaintiff's Response to Defendant's Statement of Uncontroverted Facts) at ¶3). At all relevant times, Plaintiff's first-level supervisor was Mary Fakes (Id. at ¶4).

Plaintiff was assigned to a group of employees named "VISN 11," which was comprised of Plaintiff; Lisa Goldstein, an Education Service Representative ("ESR") who was the team leader; and Cherie Bolden, a Program Support Assistant ("PSA") who provided the team support (Id. at ¶¶18, 25). Fakes also supervised another group of employees called "VISN 15" of which Jen Shearon, an ESR; Jeff Rainey, an Education Program Specialist; and Deborah Ray, a PSA, were members (Id. at ¶¶25, 62, 64; Doc. 36.22).

On June 29, 2009, Fakes rated Plaintiff at "fully successful or better" on his 90-day performance review, which required her to assess, inter alia, whether Plaintiff's "[r]elationships with supervisors, co-workers, and others within the organization [were] consistently courteous and cooperative in nature and contribute[d] to the effective operation of the work unit and team

---

where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E). With his memorandum in support of his summary judgment motion, Defendant submitted exhibits and a statement of facts with citations to the record (Docs. 35-37 & Attach.). Plaintiff filed a response to Defendant's statement of unconverted facts, in which he specifically objected to some, but not all, of the facts as set forth by Defendant, and provided specific references to portions of the record for some, but not all, of the matters he claimed were in dispute (Doc. 38). To the extent Plaintiff did not specifically dispute certain facts and disputed other facts without providing specific citations to the record, the Court has deemed those facts admitted for the purposes of adjudicating the parties' cross-motions for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (party opposing summary judgment motion must offer controverting affidavits or other evidence from which a reasonable jury could return a verdict in his favor); see also Schooley v. Kennedy, 712 F.2d 372, 373 (8th Cir. 1983) (pro se litigants are not excused from compliance with local rules).

function" (Doc. 38.11). Fakes's appraisal did not allege that Plaintiff had engaged in inappropriate behavior or communications with other EES employees (Id.).

On July 28 and 29, 2009, employees of VISN 11 and VISN 15 participated in an off-site, team-building retreat (Doc. 41 at ¶¶24-25). During the retreat, the employees discussed rumors that Fakes had been hiring her friends and former co-workers for positions at EES and that some EES employees were afraid of Fakes (Id. at ¶26). On August 13, 2009, several employees of VISN 11 and VISN 15 attended an after-work going-away party for a departing EES employee. During the party, some of the employees discussed the rumors regarding Fakes's hiring practices and their belief that she was showing favoritism to her friends and former co-workers (Id. at ¶28).

On August 14, 2009, Plaintiff met with Fakes and informed her that his co-workers had expressed concern that she was showing favoritism to her friends by hiring them to work at EES. He did not identify the co-workers who had voiced concern, and he did not allege that Fakes had violated Title VII or that she had been discriminating against EES employees or applicants on the basis of their race, national origin, or religion (Docs. 36.2 at 13-16; 36.13 at 7-10; 41 at ¶¶31-35).[2]

In August 2009, Wayne Surratt became Plaintiff's second-level supervisor (Doc. 41 at ¶48). Plaintiff's employment with the VA was terminated on October 22, 2009; the effective date of his termination was November 7, 2009 (Id. at ¶6). A termination memorandum from Surratt to Plaintiff, dated October 22, 2009, stated the following as the basis of Plaintiff's termination:

---

[2] Plaintiff now claims that he did not mention race to Fakes during the August 14, 2009 meeting because she became upset when he reported the rumors regarding her hiring practices (Doc. 41 at ¶31). He has not, however, submitted any admissible evidence to support this assertion; and his testimony at his deposition and administrative hearing tends to contradict it (Docs. 36.2 at 11-15; 36.13 at 7-9, 24-25).

On May 6, 2009, [Fakes] verbally counseled you regarding your inappropriate behavior and communications with fellow employees. On May 18, 2009, [Fakes] had a follow-up conversation with you to address inappropriate communications with fellow employees. On June 29, 2009 you were again verbally counseled for inappropriate communication with fellow employees. On August 14, 2009 you were again verbally counseled that involving yourself in matters that do not involve you is inappropriate. On August 17, 2009 you were verbally counseled for inappropriate conversations with fellow employees, disclosure of information obtained in confidence to others and involving yourself in situations that do not pertain to your employment within [EES].

(Doc. 36.5). Plaintiff denies that he was ever verbally counseled by Fakes, and notes that Fakes did not document any of the alleged counseling sessions on her calendar (Docs. 38.16; 41 at ¶¶21-23, 40, 42). Defendant has submitted notes which he claims were prepared by Fakes and which purport to document various times she verbally counseled Plaintiff (Doc. 36.10). Defendant has also submitted notes that Fakes took during an October 16, 2009 meeting attended by Fakes, Surratt, and a VA human resources representative. The notes reveal that, as of that date, Surratt "want[ed Plaintiff] gone," and he was concerned Plaintiff would not "screw up" if he were put on notice and given an opportunity to improve his behavior. The notes also reflect that the human resources representative expressed concern that a third-party might later question why Plaintiff was not put on notice before he was terminated (Doc. 36.18).[3]

On January 21, 2010, Plaintiff filed an EEO complaint alleging that Defendant had discriminated against him based on his age and race, and had retaliated against him as well; his EEO complaint did not allege discrimination or retaliation on the basis of his status as a veteran (Docs. 36.6; 41 at ¶7). During his deposition and administrative hearing, Plaintiff testified, inter alia, that when he reported his co-workers' concerns to Fakes, he did not know the identities of

---

[3] Although the parties dispute whether Fakes ever verbally counseled Plaintiff, the Court need not reach this issue in light of its conclusion, discussed more fully in the Analysis section, that Plaintiff has failed to establish a prima facie case of age discrimination, race discrimination, or Title VII retaliation.

the friends to whom she had allegedly shown favoritism, and that he had assumed her friends were Caucasian (Docs. 36.2 at 12-14; 36.13 at 24-26).

Fakes testified to the following relevant facts at Plaintiff's administrative hearing (Doc. 36.2). On May 6, 2009, Eunice Beckwith, another EES employee who reported to Fakes, informed Fakes that Plaintiff had been rude and unprofessional to EES staff. According to Fakes, Beckwith told her that Bolden, the PSA who supported Plaintiff, had complained about Plaintiff's behavior. Fakes then spoke with Beckwith, who expressed concern about Plaintiff's "rude tone and abrupt conversations" with her (Doc. 36.2 at 24). Fakes further testified that she then met with Plaintiff and, inter alia, advised him that other employees had reported to her that he had been "speaking down to them or giving orders," and recommended that he consider taking a different approach with his co-workers (Id. at 28). Fakes followed up with Plaintiff a few weeks later, and advised him that EES fostered more of a "team" approach, as opposed to "giv[ing] an order and walk[ing] away" (Id. at 29). Plaintiff does not deny that Beckwith and Bolden voiced concerns to Fakes about him and the way he was interacting with support personnel; he does however dispute the accuracy of Defendant's allegation that his behavior was actually inappropriate (Doc. 41 ¶¶18-19).

Fakes further testified that, in August 2009, Plaintiff approached her and told her that he "had had words with" one of his co-workers at the going-away party (Doc. 36.2 at 30, 34-35). According to Fakes, Plaintiff informed her that one of his co-workers complained about Fakes's hiring practices at the party; that he told the co-worker he had heard similar complaints about Fakes's hiring practices during confidential discussions at the retreat; that the co-worker, who he would not identify, told him not to involve himself in business that did not involve him; and that the co-worker had yelled at him in his office the next morning (Doc. 36.2 at 30-33). Fakes also

testified that Plaintiff told her she needed to "take care of" the rumors about her hiring practices (Id. at 33-34). Upon further investigation, Fakes learned that Deborah Ray, a member of VISN 15, had discussed, during the retreat, the allegations that Fakes was showing improper favoritism in her hiring decisions. According to Fakes, Ray became "very upset" when she approached her to discuss what Plaintiff had told her, as everything at the retreat was to have remained confidential. Ray was concerned that confidential discussions with her co-workers had not remained confidential (Doc. 36.2 at 39-40). Fakes's investigation also identified Christa Hummel, an employee who did not report to her, as the employee with whom Plaintiff had the disagreement at the going-away party. When Fakes approached Hummel about what Plaintiff had told her, Hummel also became "very upset" and stated that Plaintiff should not have told Fakes about the discussion of Fakes's hiring practices at the going-away party (Id. at 40-41).

Plaintiff's EEO claim was denied after an administrative hearing (Docs. 41 at ¶¶9-11; 36.7), and on September 12, 2014, he filed suit in this Court, asserting three claims for relief (Doc. 1). First, he alleged that Defendant discriminated against him based on his race and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq. Second, he claimed that Defendant discriminated against him based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Third, he asserted that Defendant discriminated against him based on his previous military service in violation of the Uniform Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq. (Id.). Defendant moved to dismiss Plaintiff's original complaint, which Plaintiff opposed (Docs. 3-4, 6-7, 10-11). The Court granted the motion in part, and dismissed Plaintiff's claim of military-status discrimination under USERRA for failure to exhaust his administrative remedies and lack of subject matter jurisdiction, and

dismissed his ADEA claim without prejudice for failure to state a claim (Doc. 12). On October 14, 2015, Plaintiff filed his now-operative, second amended complaint, in which he asserts claims of race discrimination and retaliation in violation of Title VII, age discrimination in violation of the ADEA, and "veteran status" discrimination in violation of USERRA (Doc. 19).

Now pending are the parties' cross-motions for summary judgment (Docs. 35-39, 41, 43). Defendant argues that he is entitled to summary judgment because Plaintiff has not established a prima facie case of age discrimination, race discrimination, or Title VII retaliation, and because the Court lacks jurisdiction over his USERRA claim. Defendant further argues, that even assuming Plaintiff has made out prima facie cases of age and race discrimination, he has failed to show that Defendant's proffered reason for terminating him—his inappropriate behavior and communications with his co-workers—was pretext to discrimination (Docs. 37, 43).

Plaintiff argues that Defendant terminated him based on his age, his race, and the fact that he reported his co-workers' concerns regarding Fakes's hiring practices (Doc. 39 at 12-17). According to Plaintiff, Defendant's proffered reason for his termination is merely pretext to retaliation and age and race discrimination (Id.). In support of his position, Plaintiff points to his June 2009 assessment, in which Fakes rated him "fully successful or better" without noting any concerns about inappropriate behavior. He also contends that his disclosure of his co-workers' concerns regarding Fakes's allegedly improper hiring practices was not inappropriate because it was a "protected activity" (Doc. 41 at ¶¶6, 18-19, 21-22, 37, 42, 44-45, 49, 51, 60-62, 64-65, 68, 71, 74, 80). Plaintiff further asserts that he did not behave inappropriately by reporting to Fakes the concerns his co-workers had expressed during the July 2009 retreat, because in his view, he was not expected to maintain the retreat discussions in confidence, given the retreat's purpose, which was to develop a new EES action plan based on the employees' recommendations and

input (Doc. 36.13 at 3-4). Plaintiff also argues that he did not breach any expectation of confidentiality because he disclosed his co-workers' concerns to Fakes "in confidence" (Docs. 36.13 at 6; 41 at ¶¶26, 29, 41). In contrast, Defendant argues that Plaintiff was expected to keep the retreat discussions in confidence, noting that Plaintiff, in his deposition, and Goldstein, at the administrative hearing, both testified that retreat participants were expected to maintain the confidentiality of retreat discussions (Docs. 36.2 at 38; 36.13 at 6; 37 at 13-14).

## II. <u>Summary Judgment Standard</u>

The Court may grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Peterson v. Kopp</u>, 754 F.3d 594, 598 (8th Cir. 2014). A moving party bears the burden of informing the Court of the basis of its motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in his favor. <u>Celotex</u>, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000)). The Eighth Circuit has cautioned that "summary judgment seldom should be used in employment

discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." <u>See</u> <u>Wierman v. Casey's Gen. Stores</u>, 638 F.3d 984, 1002 (8th Cir. 2011).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. <u>Husinga v. Federal-Mogul Ignition Co.</u>, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." <u>Wermager v. Cormorant Twp. Bd.</u>, 716 F.2d 1211, 1214 (8th Cir. 1983). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Bingaman v. Kansas City Power & Light Co.</u>, 1 F.3d 976, 980 (10th Cir. 1993) (quoting <u>Anderson</u>, 477 U.S. at 251-52).

### III. <u>Analysis</u>

#### A. Plaintiff's Title VII Claims

##### 1. Plaintiff's Claim of Race Discrimination

Title VII does not require direct evidence of race discrimination. <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 92, 98-101 (2003). Where, as here, there is no direct evidence, an employee can establish a prima facie claim of race discrimination circumstantially by showing that "(1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently." <u>Philip v. Ford Motor Co.</u>, 413 F.3d 766,

768 (8th Cir. 2005) (citing Gilmore v. AT&T, 319 F.3d 1042, 1046 (8th Cir. 2003)); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Plaintiff bears the burden of establishing, by a preponderance of the evidence, "specific, tangible evidence that employees who were similarly situated in all respects to him received different treatment from" the employer. Philip, 413 F.3d at 768. The individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without any mitigating or distinguishing circumstances. Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000) (citing Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 487-88 (8th Cir. 1998)). Permanent employees are not similarly situated to probationary employees. Mercer v. City of Cedar Rapids, 308 F.3d 840, 844 (8th Cir. 2002). If the plaintiff can establish a prima facie case of discrimination based on race, the burden then shifts to the employer to establish a legitimate, non-discriminatory reason for the adverse employment action. Clark, 218 F.3d at 918.

Plaintiff alleges that Defendant discriminated against him based on his race (Docs. 19; 39 at 9-12). In response, Defendant does not dispute that Plaintiff, an African-American, is a member of a protected class, or that he suffered an adverse employment action when he was terminated. Instead, Defendant contends that, given his inappropriate behavior, Plaintiff cannot show that he met Defendant's legitimate expectations, or that similarly situated employees who were not members of the protected class were treated any differently than he was (Docs. 37 at 8-12; 43 at 9-12).

Plaintiff has submitted no direct evidence of race discrimination. He has, however, identified three employees whom he claims were similarly situated to him but were treated differently: Jeff Rainey, a Caucasian, male Education Specialist assigned to VISN 15; Deborah Ray, a Caucasian, female PSA assigned to VISN 15; and Marty Oexner, a Caucasian male

Instructional Systems Specialist in the EES's National Projects unit. Both reported to Fakes (Docs. 36.22; 41 at ¶¶60-65). According to Plaintiff, these three employees were similarly situated to him because, although they had different job titles and were assigned to different EES units, they performed similar job duties and also reported to Mary Fakes (Doc. 36.13 at 11-12). Plaintiff asserts that Oexner engaged in the same behavior that he did by attending the August 2009 going-away party (Docs. 36.13 at 13-15; 41 at ¶¶60-61). He further asserts that Rainey and Ray engaged in similar behavior by discussing Fakes's hiring practices at the retreat (Docs. 36.13 at 15-17; 41 at ¶¶63-65). Rainey was not disciplined for attending the going-away party; and Oexner was not disciplined for discussing Fakes's hiring practices at the retreat (Doc. 41 at ¶¶61-62). According to Plaintiff, Fakes made a negative comment on Ray's performance review after she learned of the comments she made regarding favoritism at the retreat (Docs. 38.3 at 8; 38.22; 41 at ¶64). Plaintiff does not allege that Rainey, Ray, or Oexner told Fakes that their co-workers had expressed concerns regarding her hiring practices, or that they had inappropriate workplace interactions with their co-workers (Doc. 36.13 at 15, 17-18).

In response, Defendant contends that Rainey, Ray and Oexner were not similarly situated to Plaintiff (Docs. 37 at 8-9; 43 at 7-8). More specifically, Defendant notes that, unlike Plaintiff, Rainey, Ray, and Oexner were not probationary employees (Doc. 41 at ¶¶60, 62, 64). Defendant also argues that, unlike Plaintiff, Rainey, Ray, and Oexner did not breach their co-workers' confidence by disclosing retreat discussions to Fakes.

The Court concludes that Plaintiff has failed to establish a prima facie case of race discrimination under Title VII because he has not identified any employee who was similarly situated to him but was treated differently. Philip, 413 F.3d at 768 (plaintiff must identify similarly situated employees who were not members of the protected class and who were treated

differently). Notably, unlike Plaintiff, Oexner, Ray, and Rainey were not probationary employees. Mercer, 308 F.3d at 844 (probationary employees and permanent employees are not similarly situated). In addition, nothing in the record suggests that Oexner, Ray, or Rainey engaged in the same behavior for which Plaintiff was disciplined, i.e., complaining to Fakes that other employees thought she was favoring her friends and former co-workers in hiring decisions. Oexner, Ray, and Rainey therefore were not similarly situated to Plaintiff. Further, Rainey, Ray, and Oexner did not disclose their discussions with co-workers or have inappropriate interactions with co-workers. In short, Plaintiff has not identified any probationary employee who reported to Fakes, complained to her about her allegedly improper hiring practices, and was not terminated as a result. Accordingly, the Court concludes that Plaintiff has not established a prima facie case of race discrimination, as he has not substantiated his allegation with evidence that would permit the Court, or a jury, to find in his favor. Defendant is entitled to summary judgment on Plaintiff's race discrimination claim. See Celotex, 477 U.S. at 331.

### 2. Plaintiff's Title VII Retaliation Claim

Plaintiff argues that Defendant retaliated against him because he participated in "protected concerted activities," i.e. conversations with his co-workers about the hiring of Fakes's friends and his report to Fakes that his co-workers had concerns that she was favoring her friends when hiring for positions at EES (Doc. 39). In response, Defendant contends that Plaintiff's Title VII retaliation claim must fail because he never reported a violation of Title VII, and because he cannot establish that his report of Fakes's allegedly improper hiring practices was the "but for" cause of his termination (Docs. 37, 43).

To establish a prima facie claim of retaliation under Title VII, Plaintiff must show (1) that he engaged in protected activity; (2) that he suffered a materially adverse employment action;

and (3) the materially adverse action was causally connected to his protected activity. <u>Wright v. St. Vincent Health Sys.</u>, 730 F.3d 732, 737 (8th Cir. 2013) (citing <u>Kim v. Nash Finch Co.</u>, 123 F.3d 1046, 1060 (8th Cir. 1997)). "Protected activity is 'an informal or formal complaint about, or other opposition to, an employer's practice or act . . . if the employee reasonably believes such an act to be in violation of [Title VII].'" <u>Petersen v. ProxyMed, Inc.</u>, 617 F. Supp. 2d 835, 844 (D.S.D. 2008) (quoting <u>Jeseritz v. Potter</u>, 282 F.3d 542, 548 (8th Cir. 2002)). A "protected activity" can be either opposing an act of discrimination made unlawful by Title VII, or making a charge, testifying, assisting, or participating in an investigation under Title VII. <u>See Davis v. Jefferson Hosp. Ass'n</u>, 685 F.3d 675, 684 (8th Cir. 2012). To establish that he engaged in protected activity, Plaintiff need not demonstrate that the underlying conduct he opposed was, in fact, prohibited by Title VII; he must, however, show that he had a good faith, reasonable belief that the underlying conduct violated the statute. <u>Brannum v. Mo. Dep't of Corr.</u>, 518 F.3d 542, 547 (8th Cir. 2008) (citing <u>Bakhtiari v. Lutz</u>, 507 F.3d 1132, 1137 (8th Cir. 2007)).

Plaintiff's own deposition testimony shows that, at the time he engaged in the alleged protected activity, he believed only that Fakes had been hiring her friends and former co-coworkers for positions in EES, conduct which he could not have reasonably believed was prohibited by Title VII. He did not report discriminatory conduct, and according to his own testimony, at the time of his alleged protected activity, he did not know who the friends were or whether they were Caucasian. As such, the Court concludes that Plaintiff's acts of discussing Fakes's hiring practices with his co-workers and of complaining about alleged favoritism clearly were not protected by Title VII, which by its plain terms prohibits only employment discrimination that is based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2 (prohibiting employment discrimination based on race, color, religion, sex, and national origin);

Gilliam v. Lee Cnty. Sch. Bd., No. 2:01CV00083, 2002 WL 31906274, at *5 n.6 (W.D. Va. 2002) ("Nepotism, of course, is not a violation of Title VII unless it is based on race or religion.") (citing Thomas v. Washington Cnty. Sch. Bd., 915 F.2d 922, 925 (4th Cir. 1990)); Robinson-Reeder v. Am. Council on Educ., 532 F.Supp.2d 6, 14-15 (D.D.C. 2008) (plaintiff's allegation that she was placed on probation after she complained of workplace nepotism was insufficient to provide foundation for Title VII retaliation claim, as complaining about effects of nepotism did not qualify as protected activity).

In short, at the time he engaged in the allegedly protected activity of reporting what he believed were nepotistic hiring practices, Plaintiff did not have a reasonable belief that his conduct was protected by Title VII's anti-retaliation provision. See 42 U.S.C. § 2000e-3(a) (prohibiting employers from discriminating against an employee because he has opposed an employment practice made unlawful by Title VII, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII); cf. Logan v. Dep't of Veterans Affairs, 404 F. Supp. 2d 72, 76-77 (D.D.C. 2005) (plaintiff's grievance regarding medical care and letter regarding management practices were not protected activity under Title VII because they did not "include a claim of discrimination based upon race, color, religion, sex, or national origin").

### B.  Plaintiff's ADEA Claim

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Persons age forty and over are protected by the ADEA. 29 U.S.C. § 631. Plaintiff can meet his burden of establishing intentional discrimination by presenting either direct or,

more likely, indirect evidence of employment discrimination based on age. Madel v. FCI Mktg., Inc., 116 F.3d 1247, 1251 (8th Cir. 1997) (citing Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1332-33 (8th Cir. 1996)). In cases involving indirect evidence of age discrimination, courts apply the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id. (citing Holley v. Sanyo Mfg. Inc., 771 F.2d 1161, 1164 (8th Cir. 1985)). Under the McDonnell Douglas framework, Plaintiff must first establish a prima facie case of age discrimination. Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000) (citing Regel v. K-Mart Corp., 190 F.3d 876, 879 (8th Cir. 1999)). To establish a prima facie case of age discrimination, Plaintiff must show (1) he is a member of a protected age group; (2) he was performing his job at a level that met Defendant's legitimate expectations; (3) he was terminated; and (4) he was replaced by a younger person. Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000); Fabian v. St. Louis Rams, P'ship, No. 4:12-cv-1112-JAR, 2014 WL 222816, at *4 (E.D. Mo. Jan. 21, 2014). A plaintiff may create an inference of age-based discrimination by showing that similarly-situated employees outside the protected class were treated more favorably. Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007). However, to do so, a plaintiff must show that the other employees were similarly situated in all relevant respects. Lorenz v. Tyson Foods, Inc., 147 F. Supp. 3d 792, 802 (N.D. Iowa 2015) (citing Ridout v. JBS USA, LLC, 716 F.3d 1079, 1085 (8th Cir. 2013)). Individuals used for comparison must have dealt with the same supervisors, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. Id. (citing Wierman, 638 F.3d at 994).

If Plaintiff establishes a prima facie case of age discrimination, then the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for any adverse employment action taken against Plaintiff. Id. If Defendant puts forth such a reason,

Plaintiff must then present evidence sufficient to raise a question of material fact as to whether Defendant's proffered reason was pretextual and to create a reasonable inference that age was a determinative factor in the adverse employment action. <u>Fisher</u>, 225 F.3d at 919 (citing <u>Keathley v. Ameritech Corp.</u> 187 F.3d 915, 919 (8th Cir. 1999)). The ultimate issue on a motion for summary judgment on an ADEA claim is "whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's age." <u>Madel</u>, 116 F.3d at 1251-52 (quoting <u>Rothmeier</u>, 85 F.3d at 1337).

Plaintiff argues that Defendant discriminated against him based on his age in violation of the ADEA by terminating him and replacing him with a younger employee. He has identified five Education Program Specialists who were hired after he was terminated, three of whom were under age 40: Robert Patterson, age 26; Patricia Bagsby, age 28; and Jamie Martin, age 28 (Doc. 38.20). According to Plaintiff, he was replaced by Mary Shea (Docs. 41 at ¶58; 43 at 10-11).

Defendant does not dispute that five new Education Program Specialists were hired after Plaintiff was terminated. Instead, Defendant emphasizes that Shea, who Plaintiff believes replaced him, is older than he is, and argues that he thus cannot establish an essential element of his prima facie ADEA claim, i.e., that he was replaced by a younger person. Defendant also notes that two of the new Education Program Specialists are older than Plaintiff: Lauran Hardy, age 50; and Shea, age 60 (Doc. 38.20). Defendant further notes that the three new Education Program Specialists who were younger than Plaintiff were hired as student trainees, and that they did not report to Fakes or Surratt (Docs. 37 at 5-6; 41 at ¶59; 41.3; 43 at 7-8).

The Court concludes that Plaintiff has failed to establish a prima facie case of age discrimination under the ADEA.[4] More specifically, even when viewed in the light most

_____

[4] Plaintiff urges the Court to make a negative inference against Defendant on the issue of

favorable to Plaintiff, the evidence does not support a finding that Plaintiff was replaced by a younger person. Celotex, 477 U.S. at 331; see also Fisher, 225 F.3d at 919. Notably, Plaintiff contends that he was replaced by Shea, who—at 60 years of age—was 13 years older than Plaintiff when she became an Education Program Specialist in September 2010.[5] Cf. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13 (1996) (no inference that adverse employment action was based on age discrimination can be made where plaintiff-employee was replaced with another employee who is insignificantly younger). In addition, of the five Education Program Specialists who Plaintiff has identified as employees who may have replaced him, two were older than he was (Shea and Hardy). Moreover, the three other new Education Program Specialists were not similarly situated to Plaintiff, as they were hired as student trainees and did not report to the same supervisor as Plaintiff. Lorenz, 147 F. Supp. 3d at 802.

The Court further notes that—at 49 years old—Plaintiff was a member of a protected class under the ADEA at the time he was hired, a fact that weighs heavily against an inference that he was later terminated because Defendant had a preference for younger employees. See Holley, 771 F.2d at 1166 (demonstrated pattern of preference for younger employees can help prove discriminatory intent). Moreover, there is no evidence that Defendant terminated any other older employees; or that Plaintiff was regularly subjected to age-based comments or epithets. See id.; see also Ruther v. KARE 11, 108 F.3d 832, 842-43 (8th Cir. 1997) (co-employees' statements that plaintiff was an "old fart," "old man," and "too old to be on the air," with other

---

whether there was a causal connection between his age and his termination, arguing that Defendant destroyed certain hiring records during the pendency of his administrative proceeding (Doc. 19 at 5-7). The Court is not persuaded by Plaintiff's spoliation argument, and notes that he did not seek an order compelling Defendant to produce the documents at issue or for the imposition of discovery sanctions.

[5] The Court also notes that Shea was promoted to Education Program Specialist eleven months after Plaintiff was terminated, a fact that also weighs against an inference that she "replaced" him (Doc. 41 at ¶¶56, 58).

evidence, raised an inference of discrimination). The Court thus concludes that Plaintiff has failed to establish a prima facie case of age discrimination under the ADEA, and that Defendant is therefore entitled to summary judgment on Plaintiff's ADEA claim. Celotex, 477 U.S. at 331.

### C. Plaintiff's USERRA Claim

Finally, Plaintiff claims that Defendant violated USERRA by discriminating against him on the basis of his previous military service (Docs. 19 at 3-5, 7-9; 39 at 7-9). In response, Defendant argues that the Court lacks jurisdiction over Plaintiff's USERRA claim (Doc. 37 at 2). Enacted by Congress in 1994, USERRA prohibits employment discrimination on the basis of military service. See 38 U.S.C. § 4301, et seq. In addition to creating these substantive rights, USERRA sets forth a detailed scheme for enforcement of rights under the Act. Under § 4323, USERRA claims against "States" and "private employers" may be brought in federal district court. Under § 4324, claims against "Federal executive agencies" may be brought before the Merit Systems Protection Board ("MSPB"). Thus, in contrast to the procedure established for employees of "States" or "private employers," who may file claims in federal district court, USERRA requires that an aggrieved Department of Veterans Affairs employee first file a claim with the MSPB. Thereafter, any appeal of the MSPB's decision must be brought before the United States Court of Appeals for the Federal Circuit. 38 U.S.C. § 4324(d)(1). The Court will therefore dismiss Plaintiff's USERRA claim for lack of jurisdiction. Ziegler v. Kempthorne, 266 F. App'x 505, 507 (8th Cir. 2008) (unpublished per curiam opinion) (federal district court lacked jurisdiction over USERRA claims brought against federal executive agency).

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 39) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 35) is **GRANTED**. A separate judgment will accompany this order.

**IT IS FINALLY ORDERED** that, in light of this ruling, all other pending motions are **DENIED as moot**.


_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 15th day of December, 2016.